**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

MARVIN HARRIS,

                Plaintiff,

    v.

JONATHAN BUSKEY,

               Defendant.

No. 9:21-CV-470
(LEK/CFH)

---

**APPEARANCES:**

Marvin Harris
17-A-2715
Five Points Correctional Facility
Caller Box 119
Romulus, New York 14541
Plaintiff pro se

Attorney General for the
State of New York
The Capitol
Albany, New York 12224
Attorney for defendant

**OF COUNSEL:**

STEVEN NGUYEN, ESQ.
Assistant Attorney General

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**[1]

Plaintiff pro se Marvin Harris ("plaintiff"), who was at all relevant times in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983, alleging that defendant

---

[1] This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

Correction Officer Jonathan Buskey[2] ("defendant") violated his constitutional rights under the Eighth Amendment. See Dkt. No. 1 ("Compl."). Presently before the Court is defendant's motion for summary judgment brought pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56. See Dkt. No. 16. Plaintiff did not file a response. For the following reasons, it is recommended that defendant's motion for summary judgment be granted.

## I. Background

On review of defendant's motion for summary judgment, the facts will be related herein in the light most favorable to plaintiff as the nonmoving party. See Rattner v. Netburn, 930 F.2d 204, 209 (2nd Cir. 1991) ("In assessing the record . . . to determine whether there is a genuine issue as to any material fact, the court is required to resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought.").

### A. Plaintiff's Factual Allegations

Plaintiff alleges that on July 3, 2020, while housed at Clinton Correctional Facility ("Clinton C.F."), he was asleep when defendant entered his cell and plaintiff asked, "[i]s this a cell search?" Compl. at 2, ¶¶ 8-9. Unprovoked, defendant "began to punch [plaintiff], and force [his] head into the bed frame, and yelled '[y]ou alcoholic prick, I'm gonna fucking kill you.'" Id. Defendant struck plaintiff in his right temple and plaintiff lost consciousness. See id. at 2, ¶ 10. When plaintiff regained consciousness, he was

---

[2] Defendant identifies his first name as Jonathan. See Dkt. No. 16. The Clerk of Court is directed to amend the docket accordingly.

strapped to a stretcher.  See id. at 2, ¶ 11.  Defendant "whispered '[i]f you tell what happened to anyone we will kill you when you get back.'"  Id.  During plaintiff's transfer to an ambulance, defendant whispered, "[r]emember, you tell them doctors what happened, we (Buskey & Sgt. Strack) [will] kill you."  Id. at 2, ¶ 12.  This comment woke plaintiff up and defendant "then struck plaintiff in the throat causing him to choke drastically, spit, and convulse."  Id.  "Sgt. Strack witnessed this assault[.]"  Id.[3]  Plaintiff was then transported to Clinton County Hospital.  See id. at 2, ¶ 13.  Plaintiff alleges that he sustained "a busted lip, left arm abrasion/slight frac[t]ure, lower back pain, [and] chronic neck pain" and that he still "suffers from [] constant headaches, back pain, vision distortion, blood running from his nose, or turning his head in either the left or right direction."  Id. at 2, ¶¶ 13-14.

On August 11, 2020, plaintiff filed a grievance related to the July 3, 2020, incident.  See Compl. at 3, ¶ 15.  "This was due in part to being hospitalized, being released from the hospital, and not being able to see, read or write."  Id.  Plaintiff's grievance was denied on August 12, 2020.  See id.  Plaintiff appealed the denial of his grievance on August 13, 2020.  See id.

## II. Legal Standard[4]

### A. Summary Judgment

---

[3] Prior to the filing of defendant's motion, plaintiff's failure to intervene claim against Sgt. Strack was sua sponte dismissed by the Court for failure to state a claim for which relief could be granted.  See Dkt. No. 9 at 5-7.
[4] All unpublished decisions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

Under Fed. R. Civ. P. 56(a), summary judgment may be granted only if all the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citation omitted); see FED. R. CIV. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).  The moving party has the burden of showing the absence of a genuine dispute of material fact by citing to "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c).  A fact is material if it "might affect the outcome of the suit," as determined by the governing substantive law; a "dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

If the moving party meets this burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 248 (citation omitted); see Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).  "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).  Still, the nonmoving party cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986) (citing Quarles v. Gen. Motors Corp., 758 F.2d 839, 840 (2d Cir. 1985) (per curiam)); see also

Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted) ("[M]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist.").

Where, as here, a party seeks judgment against a pro se litigant, the Court must afford the non-movant special solicitude. See Treistman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit explained,

> [t]here are many cases in which we have said that a *pro se* litigant is entitled to "special solicitude," that a *pro se* litigant's submissions must be construed "liberally," and that such submissions must be read to raise the strongest arguments that they "suggest[.]" At the same time, our cases have also indicated that we cannot read into *pro se* submissions claims that are not "consistent" with the *pro se* litigant's allegations, or arguments that the submissions themselves do not "suggest," that we should not "excuse frivolous or vexatious filings by *pro se* litigants," and that *pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law[]" . . . .

Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds *pro se*, . . . a court is obligated to construe his pleadings liberally.") (citations and internal quotation marks omitted).

### B. Exhaustion

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust any administrative remedies available to him or her before bringing an action for claims arising out of his or her incarceration. See 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). The exhaustion requirement applies "to all inmate suits

about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). Exhaustion is required even where the prisoner seeks relief not available in the administrative grievance process, such as money damages. See id. at 524. "To exhaust administrative remedies, the inmate must complete the full administrative review process set forth in the rules applicable to the correctional facility in which he or she is incarcerated." Cuadrado v. Brueault, No. 9:14-CV-1293 (DNH/CFH), 2015 WL 1606178, at *3 (N.D.N.Y. Apr. 8, 2015); see Jones v. Bock, 549 U.S. 199, 218 (2007). "In accordance with the PLRA . . . [DOCCS] has made available a well-established inmate grievance program . . . [which] involves [] following [a] three-step procedure for the filing of grievances." Smith v. Kelly, 985 F. Supp. 2d 275, 280 (N.D.N.Y. 2013) (citing 7 N.Y.C.R.R. §§ 701.5, 701.6(g), 701.7).[5]

"[T]he PLRA requires proper exhaustion, which means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." Ruggiero v. Cnty. of Orange, 467 F.3d 170, 176 (2d Cir. 2006) (quotation marks and citations omitted); see also Sanders v. St. Mary, No. 9:19-CV-1314 (BKS/TWD), 2021 WL 1575944, at *4 (N.D.N.Y. Apr. 22, 2021), report and recommendation adopted, 2021 WL 1999781 (N.D.N.Y. May 19, 2021) ("Generally, if a plaintiff . . . fails to follow each of the required steps prior to commencing an action, he

---

[5] First, an inmate must file a complaint with the Inmate Grievance Resolution Committee ("IGRC") within twenty-one calendar days of the alleged incident. See 7 N.Y.C.R.R. § 701.5(a). Second, an inmate may appeal IGRC's decision to the facility's Superintendent. See id. § 701.5(c)(1). Third, an inmate may appeal the Superintendent's decision to the Central Office Review committee ("CORC"). See id. § 701.5(d)(1)(i). "There is also an expedited procedure for complaints raising bona fide issues of harassment or other misconduct by DOCCS staff, which bypasses the IGRC, and initially refers the grievance to the facility superintendent or his designee for prompt review, investigation, and decision." Ferguson v. Mason, No. 9:19-CV-927 (GLS/ATB), 2021 WL 862070, at *2 (N.D.N.Y. Jan. 7, 2021), report and recommendation adopted, 2021 WL 531968 (N.D.N.Y. Feb. 12, 2021) (citing 7 N.Y.C.R.R. § 701.8).

has failed to exhaust his administrative remedies as required under the PLRA."). The PLRA's "exhaustion requirement hinges on the 'availability' of administrative remedies[.]" Ross v. Blake, 578 U.S. 632, 642 (2016) (brackets omitted). Availability means "an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" Id. (quoting Booth v. Churner, 532 U.S. 731, 738 (2001)). "An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." Id.

There are "three kinds of circumstances in which an administrative remedy . . . is not capable of use to obtain relief." Ross, 578 U.S. at 643. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. (citing Booth, 532 U.S. at 736). "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. Lastly, administrative remedies are unavailable where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 644.

### III. Discussion

Defendant argues that plaintiff's complaint should be dismissed in its entirety for his failure to exhaust his administrative remedies because plaintiff's grievance was "untimely or otherwise procedurally defective[.]" Dkt. No. 16-4 at 9 (citation omitted). Defendant also contends that plaintiff's complaint should be dismissed because he

7

commenced the present action prior to exhausting his administrative remedies.  See id. In support of his motion, defendant submits a copy of plaintiff's grievance and Clinton C.F.'s response to his grievance, as well as declarations from the Incarcerated Grievance Program ("IGP") Supervisor Christine Gregory, and IGP Assistant Director, Rachael Seguin.  See Dkt. Nos. 16-1, 16-2.

## A. Failure to Respond to Summary Judgment Motion

As an initial matter, plaintiff has not responded to defendant's motion for summary judgment.  See Dkt. Nos. 18, 19.  A party's failure to oppose a motion for summary judgment "does not . . . mean that the motion is to be granted automatically." Champion v. Artuz, 76 F.3d 483, 486 (2d Cir. 1996) (per curiam).  "Such a motion may properly be granted only if the facts as to which there is no genuine dispute 'show that the moving party is entitled to a judgment as a matter of law.'"  Id. (citation omitted); see FED. R. CIV. P. 56(a).  Additionally, "summary judgment should not be entered by default against a *pro se* plaintiff who has not been given any notice that failure to respond will be deemed a default."  Champion, 76 F.3d at 486.  Under Local Rule 56.2, "[w]hen moving for summary judgment against a pro se litigant, the moving party shall inform the pro se litigant of the consequences of failing to respond to the summary judgment motion."  L.R. 56.2.  Additionally, Local Rule 7.1(a)(3) explains that

> "[w]here a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as this Rule requires shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause is shown."

L.R. 7.1(a)(3); see Vail v. O'Gorman, 9:19-CV-0034 (GLS/ML), 2021 WL 5970307, at *6 (N.D.N.Y. Nov. 19, 2021), report and recommendation adopted, 2021 WL 5967105

8

(N.D.N.Y. Dec. 16, 2021) (internal quotation marks omitted) ("[W]here a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed to have consented to the legal arguments contained in that memorandum of law under Local Rule 7.1(a)(3)."). However, if a party fails to respond to a motion for summary judgment but provides a notarized complaint, "[the] verified complaint is to be treated as an affidavit . . . and will be considered in determining whether material issues of fact exist[.]" Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995), abrogated on other grounds by Tangreti v. Bachmann, 983 F.3d 609 (2d Cir. 2020)).

Defendant included in his motion for summary judgment a notification of the consequences for failing to respond to a summary judgment motion. See Dkt. No. 16 at 3. The Court also sent plaintiff a notice regarding his response deadline and informed him of the consequences for failing to respond. See Dkt. No. 17. Following expiration of the response deadline, plaintiff requested an extension of time to respond. See Dkt. No. 18. Plaintiff's request was granted, and his response was due by November 8, 2021. See Dkt. No. 19. To date, plaintiff has not filed a response. See Dkt. No. 19. Therefore, defendant's statements will be accepted as true to the extent "those facts are supported by evidence in the record." Vail, 2021 WL 5970307, at *6.

### B. Plaintiff's Failure to Exhaust

"A grievance which is denied as untimely does not satisfy the PLRA's exhaustion requirements." Burrell v. Zurek, No. 9:17-CV-0906 (LEK/TWD), 2019 WL 5197519, at *15 (N.D.N.Y. June 21, 2019), report and recommendation adopted, 2019 WL 4051596 (N.D.N.Y. Aug. 28, 2019) (citation omitted). Additionally, "[f]iling an untimely grievance

9

without subsequently obtaining a finding of mitigating circumstances is insufficient to exhaust one's available administrative remedies." Adams v. Ohara, No. 9:16-CV-0527 (GTS/ATB), 2019 WL 652409, at *7 (N.D.N.Y. Feb. 15, 2019) (collecting cases); see also Feliz v. Johnson, No. 9:17-CV-1294 (DNH/ATB), 2019 WL 5197216, at *4 (N.D.N.Y. June 6, 2019), report and recommendation adopted, 2019 WL 3491232 (N.D.N.Y. Aug. 1, 2019) (citations omitted) ("[I]f a plaintiff fails to follow each of the required steps of the IGP, including receipt of a decision from CORC, prior to commencing litigation, he has failed to exhaust his administrative remedies as required under the PLRA.").

Here, the incident underlying this action occurred on July 3, 2020, and, thus, plaintiff had until July 24, 2020, to file his grievance. See Compl. at 2, ¶ 8; see also 7 N.Y.C.R.R. § 701.5(a)(1); Dkt. No. 16-1 at 5, ¶ 21. Plaintiff did not file his grievance until August 11, 2020. See Dkt. No. 16-1 at 9. The IGP Supervisor responded to plaintiff on August 12, 2020, informing him that his grievance was untimely "and no sufficient mitigating circumstances were supplied." Dkt. No. 16-1 at 11. The Supervisor's response also indicated that an exception to the time limit for filing a grievance may be granted based on mitigating circumstances, but "an exception to the time limit may not be granted more than 45 days after an alleged occurrence." Dkt. No. 16-1 at 11 (quoting 7 N.Y.C.R.R. § 701.6(g)).[6] Thus, plaintiff had until August 17, 2020—five days after receiving the IGP Supervisor's response—to request an extension

---

[6] The Supervisor's response also stated that "[a]n inmate may pursue a complaint that an exception to the time limit was denied by filling a separate grievance." Dkt. No. 16-1 at 11. Plaintiff does not allege that he sought an extension of time or filed a separate grievance, and IGP Supervisor Gregory stated that "[b]ased upon my review of the available records . . . [p]laintiff never submitted any further correspondences relating to the July 3, 2020 incident." Dkt. No. 16-1 at 5, ¶ 23; see generally Compl.

10

of time to file his grievance and supply mitigating circumstances. See id. at 5, ¶ 22. Plaintiff does not claim that he requested an exception to the time limit, but he claims to have appealed the denial of his grievance on August 13, 2020. See Compl. at 3, ¶ 15. Plaintiff does not provide any information regarding how or to whom he appealed the denial of his grievance. See generally Compl. IGP Assistant Director Seguin attested that "[p]laintiff has not appealed any facility-level grievance determinations to CORC, including those against [d]efendant Buskey for an alleged assault on July 3, 2020." Dkt. No. 16-2 at 4, ¶ 12. Accepting defendant's assertions as true, plaintiff has not exhausted his administrative remedies because his grievance was untimely, he did not provide any mitigating circumstances and seek an extension of time to file his grievance, and he failed to file an appeal.

### C. Availability

Once it is determined that a plaintiff has failed to exhaust his or her administrative remedies, "the Court must assess whether administrative remedies were available to" the plaintiff. Stephanski v. Allen, No. 9:18-CV-0076 (BKS/CFH), 2020 WL 806331, at *7 (N.D.N.Y. Jan. 22, 2020), report and recommendation adopted, 2020 WL 777268 (N.D.N.Y. Feb. 18, 2020). Defendant does not address whether administrative remedies were available to plaintiff, or address plaintiff's contention that he was hospitalized after the alleged incident. See generally Dkt. No. 16-4. "[T]he ultimate burden of proof with respect to the exhaustion defense remains, at all times, with the defendants." Nelson v. Plumley, No. 9:12-CV-422 (TJM), 2015 WL 4326762, at *8 (N.D.N.Y. July 14, 2015) (citations omitted). However, "'the burden of production' may shift to a plaintiff when a court considers whether the grievance process was

11

unavailable[.]" Coleman v. Nolan, No. 9:15-CV-40 (ATB), 2018 WL 4732778, at *4 (N.D.N.Y. Oct. 2, 2018) (citations omitted).

Although plaintiff does not specifically raise unavailability in his complaint, he alleges that while he was being strapped to a stretcher, defendant whispered, "[i]f you tell what happened to anyone we will kill you when you get back." Compl. at 2, ¶ 11. Plaintiff also states that as he was transferred to the ambulance, defendant whispered, "[r]emember, you tell them doctors what happened, we . . . [will] kill you." Id. at 2, ¶ 12. In plaintiff's grievance, which defendant submits, plaintiff stated that as a result of the July 3, 2020, incident, he "was in a coma for 2 days[.]" Dkt. No. 16-1 at 9. Plaintiff contends that "when [he] woke up [he] was told that [he] spit in a C.O.'s face in the facility hospital" but that he does not remember anything. Id. Plaintiff stated that he "woke up with [his] entire back, face and lip scraped up and injured." Id.

Administrative remedies may be unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Ross, 578 U.S. at 644. "The fear of retaliation must be 'reasonable' to render the grievance procedure 'unavailable.'" Chaney v. Vena, No. 9:15-CV-653 (TJM/ATB), 2017 WL 6756645, at *4 (N.D.N.Y. Nov. 29, 2017), report and recommendation adopted, 2017 WL 6734186 (N.D.N.Y. Dec. 29, 2017) (citations omitted). Administrative remedies are unavailable if "the alleged threats and violence 'were such that a person of ordinary firmness would be deterred from using the facility's internal grievance process.'" Decolines v. Hollenbeck, No. 9:20-CV-1502 (MAD/ATB), 2021 WL 5508317, at *4 (N.D.N.Y. June 15, 2021), report and recommendation adopted, 2021 WL 4947118 (N.D.N.Y. Oct. 25, 2021) (citation omitted) (collecting

cases). "[H]owever, the Second Circuit has concluded that when an inmate files a grievance, notwithstanding the threats of retaliation and intimidation of which that inmate complains, the failure to fully exhaust under the PLRA will not be excused on this ground." Grant v. Kopp, No. 9:17-CV-1224 (GLS/DEP), 2019 WL 368378, at *6 (N.D.N.Y. Jan. 3, 2019), report and recommendation adopted, 2019 WL 367302 (N.D.N.Y. Jan. 30, 2019) (citing McNab v. Doe, 686 F. App'x. 49, 51 (2d Cir. 2017) (summary order)). Accordingly, if the plaintiff "nonetheless filed a grievance" and the alleged actions did not "actually prevent" the plaintiff from utilizing the IGP, the plaintiff will have "failed to meet his burden of production with respect to unavailability." Id. at *6-7 (citation omitted); see also McNab, 686 F. App'x. at 51.

Although plaintiff alleges that defendant twice threatened to kill him if he told anyone about the July 3, 2020, incident, these actions did not "actually prevent[]" plaintiff from utilizing the IGP. McNab, 686 F. App'x. at 51; see Compl. at 2, ¶¶ 11-12. Plaintiff proceeded to file his grievance on August 11, 2020, and in it, did not complain of any interference or harassment from defendant, and does not presently allege that defendant interfered with his ability to file the grievance.[7] See Compl. at 3, ¶ 15; Dkt. No. 16-1 at 9; cf. Decolines v. Hollenbeck, No. 9:20-CV-1502 (MAD/ATB), 2021 WL 4947118, at *3-4 (N.D.N.Y. Oct. 25, 2021) (denying summary judgment where the plaintiff "allege[d] reasonably specific allegations that he was threatened and assaulted because of his prior filing of a grievance, which was ripped up before him, and his failure to keep his 'mouth shut'."). As to plaintiff's alleged appeal of the denial of his

---

[7] Plaintiff's grievance reads in full: "On 7-3-2020, I was found unresponsive in my cell, I was taken to an outside hospital, and was in a coma for 2 days, when I woke up I was told that I split in a C.O.'s face in the facility hospital, I don't remember nothing, but woke up with my entire back, face, and lip scraped up and injured." Dkt. No. 16-1 at 9.

13

grievance, he does not explain who he submitted the grievance to, who the appeal concerned, how he submitted the grievance, that there was any interference with the alleged filing, and he fails to present documentary evidence of the same. See Compl. at 3, ¶ 15; cf. Sankara v. Montgomery, No. 9:16-CV-00885 (FJS/TWD), 2018 WL 4610686, at *8 (N.D.N.Y. June 25, 2018), report and recommendation adopted, 2018 WL 3408135 (N.D.N.Y. July 13, 2018) ("[The p]laintiff has submitted no documentary evidence whatsoever that supports his conclusory assertion that he submitted grievances . . . or demonstrates any follow up on his part when he allegedly received no response."). Therefore, it cannot be said that the prison was thwarting plaintiff's ability to utilize the grievance process. See Ross, 578 U.S. at 644.

Administrative remedies may also be considered unavailable if they "operate[] as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Ross, 578 U.S. at 643 (citing Booth, 532 U.S. at 736). The Second Circuit recently held "that administrative remedies are 'unavailable' when (1) an inmate's failure to file for the administrative remedy within the time allowed results from a medical condition, and (2) the administrative system does not accommodate the condition by allowing a reasonable opportunity to file for administrative relief." Rucker v. Giffen, 997 F.3d 88, 94 (2d Cir. 2021) (citation omitted) (explaining that the plaintiff "was admitted to the hospital for over a month during which he was put in a coma and underwent surgeries that nearly caused his death. [His] medical condition and his extended hospitalization outside of the prison presented such obstacles to filing a grievance that the grievance procedures were 'incapable of use' during this period."); cf. Gonzalez v. Whittaker, No. 9:07-CV-53 (DNH/GJD), 2009 WL 789577, at *4 (N.D.N.Y.

14

Mar. 20, 2009) (explaining that the grievance procedure remained available to a plaintiff who was "in the hospital" because there was "still [] plenty of time to file after his discharge from the hospital[]" and "the grievance procedure specifically provides that an inmate may request an extension to file a grievance or appeal.").

Here, although plaintiff alleges that he was hospitalized after the July 3, 2020, incident, and his grievance states that he was in a coma for two days, he provides no hospital records and no date of discharge from the hospital. See generally Compl.; see Dkt. No. 16-1 at 9.  Assuming plaintiff's complaint and grievance as true, that he was hospitalized outside of the prison and in a coma for the two days following the July 3, 2020, incident, remedies would have been unavailable for at least those two days, and possibly more.  See Dkt. No. 16-1 at 9; see also Rucker, 997 F.3d at 94 (explaining that an "extended hospitalization outside of the prison present[s] obstacles to filing a grievance").  However, plaintiff does not explain when he was discharged back to Clinton C.F. and when in relation to that discharge he filed his grievance.  See generally Compl.; see Dkt. No. 16-1 at 9.  Rather, plaintiff filed his grievance on August 11, 2020, and it was denied on August 12, 2020, providing him five more days to request an exception to the time limit for filing.  See Dkt. No. 16-1 at 11.  Therefore, even assuming remedies were unavailable to plaintiff for the entirety of his hospital stay which might have lasted the twenty-one days available to file his initial grievance, plaintiff makes no assertion of unavailability as to filing a request for an extension of time or an appeal. See generally Compl.  Plaintiff's complaint is, therefore, insufficient to raise a genuine issue of material fact as to whether his failure to timely file his grievance "result[e]d from [his] medical condition[.]"  Rucker, 997 F.3d at 94 (the plaintiff had to file his "grievance

15

within five days of the incident giving rise to his grievance[]" but did not file "until almost a year after his hospitalization[.]"). Rather, the administrative remedies did not operate as a simple dead, and plaintiff had a reasonable opportunity to file for administrative relief because plaintiff could have, but did not, seek an extension of time to file his grievance, file a new grievance complaining that the original denial was improper because he was in the hospital, or appeal the denial. See Rucker, 997 F.3d at 94.

Finally, remedies may be unavailable when an "administrative scheme [is] so opaque that it becomes, practically speaking, incapable of use." Ross, 578 U.S. at 643 (citing Booth v. Churner, 532 U.S. 731, 736 (2001)). "When rules are so confusing that . . . no reasonable prisoner can use them, then they are no longer available." Id. at 644 (Internal quotation marks omitted). Here, the administrative process was not so opaque as to be incapable of use. Plaintiff was able to submit his grievance, but he failed to do so in a timely manner. See Dkt. No. 16-1 at 9, 11. The IGP Supervisor's response to plaintiff indicated that the complaint was untimely, that "no sufficient mitigating circumstances were supplied[]" and informed plaintiff how he could proceed by seeking an extension of time to file. Id. at 11. Plaintiff also attended and successfully completed the facility's orientation upon his arrival at Clinton C.F., which included a presentation on how to file a grievance and appeal a denial. See id. at 2, ¶ 6; 7. Therefore, it cannot be said that the grievance procedure was so opaque that plaintiff could not have made use of it. See Ross, 578 U.S. at 643; see also Lutz v. Francisco, No. 9:20-CV-240 (GTS/DJS), 2020 WL 9264825, at *6 (N.D.N.Y. Dec. 10, 2020), report and recommendation adopted, 2021 WL 868618 (N.D.N.Y. Mar. 9, 2021) (citations and internal quotation marks omitted) ("[The d]efendants have submitted evidence showing

16

that the grievance procedures are explained during orientation . . . [and the p]laintiff's misunderstanding does not render the grievance procedure unavailable.").

As explained, plaintiff had until August 17, 2020, to request an extension of time to file his grievance. See Dkt. No. 16-1 at 5 ¶ 22. Plaintiff did not request an extension, appeal, or file a new grievance complaining of the denial of his original grievance. See Dkt No. 16-2 at 6-7. As the time for plaintiff to exhaust administrative remedies has expired, it is recommended that defendant's motion for summary judgment be granted. See Calderon v. Doe, No. 9:20-CV-0645 (GLS/CFH), 2021 WL 6278740, at *6 (N.D.N.Y. Nov. 24, 2021), report and recommendation adopted, 2022 WL 43918 (N.D.N.Y. Jan. 5, 2022). If "an inmate failed to exhaust available administrative remedies – and the time in which to exhaust has expired – it is proper to dismiss the complaint with prejudice because any attempt to exhaust would be futile." Id. (citation omitted); see also Richard v. LeClaire, No. 9:15-CV-00006 (BKS/TWD), 2019 WL 5197041, at *9 (N.D.N.Y. May 6, 2019), report and recommendation adopted, 2019 WL 4233184 (N.D.N.Y. Sept. 6, 2019) (dismissing the plaintiff's claim with prejudice because "the time that ha[d] elapsed since [the p]laintiff's claims against the [d]efendants occurred, [and] it ha[d] become impossible for [the p]laintiff to exhaust his administrative remedies[.]"). Plaintiff's failure to exhaust his available administrative remedies relating to the July 3, 2020, incident, occurred nearly two years ago and is no longer curable; therefore, dismissal with prejudice is appropriate.

## IV. Conclusion

**WHEREFORE**, for the reasons set forth above, it is hereby:

**RECOMMENDED**, that defendant's motion for summary judgment (Dkt. No. 16) be **GRANTED** and that plaintiff's complaint (Dkt. No. 1) be **DISMISSED WITH PREJUDICE**; it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report Recommendation and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED**

Pursuant to U.S.C. §636(b)(1) and Local Rule 72.1(c), that the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. §636(b)(1); Fed R. Civ P. 6(a), 6(e), 72.[8]

Dated: May 5, 2022
Albany, New York

*Christian F. Hummel*
Christian F. Hummel
U.S. Magistrate Judge

---

[8] If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. See Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. See id. § 6(a)(1)(C).